UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Nicolette Glazer | Matthew Barragan |

**Proceedings:**     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. [109], filed March 16, 2020)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. [110], filed March 16, 2020)

## I.   INTRODUCTION

### A.   Plaintiff Initiates this Action

Plaintiff Marilyn Gladle ("Gladle"), acting *pro se*, filed this action on January 5, 2015, against various defendants including the United States Department of Veterans Affairs ("the VA"), the VA's Secretary, and several of the VA's employees. Dkt. 1. Gladle, again acting *pro se*, thereafter filed a first amended complaint on August 7, 2015. Dkt. 11.

### B.   Plaintiff's Second, Third, and Fourth Amended Complaints

Gladle subsequently filed several amended complaints. First, pursuant to the parties' joint stipulation, Gladle—now represented by counsel—filed a second amended complaint on October 12, 2015, naming the VA and the VA's Secretary as defendants. Dkt. 19. Defendants filed a motion to dismiss Gladle's second amended complaint on December 4, 2015. Dkt. 25. The Court dismissed Gladle's second amended complaint without prejudice on January 4, 2016, concluding that, Gladle "has failed to comply with Rule 8(a)." Dkt. 28 at 3.

Gladle filed a third amended complaint on November 30, 2015. Dkt. 23. The Court struck Gladle's third amended complaint, however, because Gladle filed her third amended complaint without leave of the Court. Dkt. 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

Gladle thereafter filed a fourth amended complaint on February 4, 2016, naming only the VA's Secretary ("the Secretary") as a defendant. Dkt. 29. The Secretary moved to dismiss Gladle's fourth amended complaint on March 21, 2016. Dkt. 32. The Court dismissed Gladle's fourth amended complaint without prejudice on April 19, 2016. Dkt. 35.

**C.     The Court Dismisses Gladle's Fifth Amended Complaint With Prejudice, and Gladle Appeals to the Ninth Circuit**

Gladle filed a fifth amended complaint on May 10, 2016, asserting claims for: (1) failure to provide a reasonable accommodation in violation of the Rehabilitation Act; (2) retaliation in violation of the Rehabilitation Act; and (3) harassment in violation of the Rehabilitation Act. Dkt. 36 ("FAC"). The Secretary filed a motion to dismiss Gladle's fifth amended complaint on May 23, 2016. Dkt. 37.

The Court dismissed Gladle's fifth amended complaint with prejudice on June 27, 2016. Dkt. 41. The Court reasoned that Gladle "has failed to allege the minimal facts necessary to state a claim for denial of a reasonable accommodation[.]" Id. at 6. With respect to Gladle's retaliation claim, the Court determined that Gladle "again fails to identify . . . who specifically retaliated against her and fails to allege facts suggesting that those individuals were even aware that she had filed complaints with the VA." Id. Finally, the Court concluded that Gladle's harassment claim "suffers from the same defects" that the Court previously identified in its order dismissing Gladle's fourth amended complaint. Id. at 7. The Court declined to grant Gladle leave to file a sixth amended complaint, explaining that "this is [Gladle's] sixth attempt to file a complaint in this case and . . . granting [Gladle] leave to amend would be futile." Id. at 8.

On July 26, 2016, Gladle filed a notice of appeal of the Court's order dismissing Gladle's fifth amended complaint. Dkt. 43. On November 2, 2017, the United States Court of Appeals for the Ninth Circuit affirmed in part and reversed in part the Court's order dismissing Gladle's fifth amended complaint. Dkt. 45. The Ninth Circuit held that the Court "properly dismissed Gladle's retaliation claim because Gladle failed to allege facts sufficient to identify the individuals who engaged in the alleged adverse employment actions or show that those individuals were aware of her protected activities." Id. at 2. Similarly, the Ninth Circuit concluded that the Court "properly dismissed Gladle's harassment claim because Gladle failed to allege facts sufficient to state any cognizable claim." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

The Ninth Circuit reversed, however, the Court's dismissal of Gladle's reasonable accommodation claim. Dkt. 45 at 2. The Court "dismissed Gladle's denial of reasonable accommodation claim because Gladle failed to allege that participation in the emergency drill was related to the essential functions of her job." Id. The Ninth Circuit concluded that "Gladle's allegations that she asked the employer if there was anything she could do other than get under desk and that the employer refused to consider alternatives are sufficient to show that Gladle requested a reasonable accommodation for her disability and the employer refused to participate in the interactive process." Dkt. 45 at 2.

**D.     Post-Remand Proceedings**

Following remand from the Ninth Circuit, the Secretary filed an answer to Gladle's FAC on January 29, 2018. Dkt. 53. On May 25, 2018, Gladle filed a motion seeking leave to file a supplemental complaint pursuant to Rule 15(d), based on allegations that, after Gladle filed this action, the VA wrongfully terminated Gladle's employment in 2017 based on Gladle's purported failure to maintain her RN license. Dkt. 65. The Court granted Gladle's motion on August 6, 2018, permitting Gladle to file a supplemental complaint. Dkt. 73.

Gladle subsequently filed a supplemental complaint on September 10, 2018. Dkt. 76. The Secretary filed a motion to dismiss Gladle's supplemental complaint on September 24, 2018. Dkt. 81. The Court dismissed Gladle's supplemental complaint without prejudice on November 5, 2018, concluding that Gladle failed to establish: (1) that Gladle exhausted her administrative remedies with the Equal Employment Opportunity Commission as to her claims based on her termination; and (2) any basis for excusing Gladle's failure to exhaust her administrative remedies. Dkt. 85.

Gladle filed a first amended supplemental complaint on November 21, 2018. Dkt. 88 ("FSC"). The Secretary filed a motion to dismiss the FSC on December 4, 2018. Dkt. 89. The Court denied the Secretary's motion to dismiss the FSC on March 20, 2019. Dkt. 97. The government thereafter filed an answer to the FSC on April 17, 2019. Dkt. 100.

The FSC does not incorporate any of the claims Gladle articulated in the FAC, including the failure to accommodate claim remanded by the Ninth Circuit. Dkt. 88. It nonetheless that the parties are proceeding both on the failure to accommodate claim alleged in the FAC and on the claims Gladle alleges in the FSC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|----------|------------------------|------|-----------------|
| Title    | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

### E.   The Parties' Cross-Motions for Summary Judgment

On March 16, 2020, Gladle filed a motion for partial summary judgment on the issue of liability as to: (1) Gladle's claim for denial of reasonable accommodation, based on the April 2010 earthquake drill, as alleged in the FAC; and (2) Gladle's three claims for retaliation, discrimination, and denial of reasonable accommodation, based on Gladle's wrongful May 2017 termination, as alleged in the FSC. Dkt. 109 ("Gladle Mot."). Gladle filed a corrected statement of uncontroverted facts and conclusions of law on March 17, 2020. Dkt. 112-1 ("Gladle SUF"). On May 18, 2020, the Secretary filed an opposition, dkt. 124 ("Gladle Opp."), and a statement of genuine disputed facts, dkt. 124-1 ("Gladle GDF"). Gladle filed a reply on August 3, 2020. Dkt. 134 ("Gladle Reply").

On March 16, 2020, the Secretary filed a corrected motion for summary judgment as to each of Gladle's remaining claims. Dkt. 113-1 ("Sec. Mot."). The Secretary also filed a statement of uncontroverted facts and conclusions of law. Dkt. 110-1 ("Sec. SUF"). Gladle filed an opposition on May 18, 2020, dkt. 123 ("Sec. Opp"), and a statement of genuine disputed facts, dkt. 123-1 ("Sec. GDF"). The Secretary filed a reply on August 3, 2020. Dkt. 135 ("Sec. Reply").

The Court held a hearing on the parties' cross motions for summary judgment on August 17, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background. Unless otherwise noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

Gladle began working as an RN, Nurse I at the VA Greater Los Angeles Healthcare System, California in 1993. Sec. SUF No. 1. Gladle received a degree in nursing from the Los Angles County USC School of Nursing in approximately 1992, after which she took the California nursing Boards. Sec. SUF No. 2. Gladle became licensed as a registered nurse ("RN") by the California Board of Registered Nursing in 1993, the same year she began working at the VA. Sec. SUF No. 3.

At the VA, Gladle held the title and position of Depression Care Manager, which involved conducting both telephonic and in-person interviews with Veterans who have been diagnosed with depression. Gladle SUF No. 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
| --- | --- | --- | --- |
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

On January 8, 2010, Gladle sustained a non-work injury related to her right knee after she fell in a pothole on the street.  Gladle SUF No. 10.  Gladle was cleared to return to work as of January 22, 2010.  Gladle SUF No. 11.  On April 2, 2010, Lane Turzan ("Turzan"), Gladle's supervisor, wrote a letter to Gladle acknowledging a physician's note from Health Care Partners Medical Group regarding Gladle's non-work related condition, noting that due to a recommended limitation to "walking no more than 10 minutes every day," Gladle was assigned to a sedentary RN assignment for 3.5 hours per day.  Gladle SUF Nos. 18-20.  Turzan's letter stated that the VA had "no other limited duty assignment at the LAACC" to which Gladle could be assigned as a staff nurse.  Gladle SUF No. 19.

## A.     The April 27, 2010 Earthquake Drill

The VA conducted an earthquake drill on April 27, 2010.  Sec. SUF. No. 5.  The VA's Chief of Occupational Safety and Health and Emergency Management, Benjamin K. Spivey, testified at his deposition that the VA's purpose in conducting an earthquake drill is to "protect employees, to keep them safe, and patients and guests in our buildings," and that the VA staff is also educated that they have to care for their own safety first.  Sec. SUF Nos. 16 & 17; Spivey Dep. at 23:6-8 & 35:5-9.  Los Angeles VA employees received mandatory training regarding earthquake drills that included safety tips instructing: "if you are … indoors: Drop, cover, and hold on. Drop to the floor, take cover under a sturdy desk or table, and hold onto it firmly.  Be prepared to move with it until the shaking stops."  Gladle SUF Nos. 26 & 27; Spivey Dep at 25:1-6.[1]

Turzan explained at her deposition that during the April 27, 2010 drill she walked through the corridors at the VA saying, "[d]uck and cover.  This is an earthquake drill."  Sec. SUF. No. 7; Turzan Dep. at 46:19-24.  The VA's policy was that when a staff member cannot "duck and cover" under a desk during any earthquake drill, for example because they are unable to kneel down, they can instead "stand against the wall" because the main goal during an earthquake is "to get away from windows [and] anything that's going to fall."  Gladle SUF No. 32.

The VA's Chief of Occupational Safety and Health and Emergency Management testified that at the VA's Los Angeles facilities, there is often a sign-in sheet and "critique" associated with conducting earthquake drills, including "photographs and so on."  Gladle

---

[1] The Court observes that Gladle's corrected document citation regarding this document supports her statement that it is a mandatory earthquake training presentation; the Secretary does not otherwise dispute that fact. *See* Dkt. 134-1 at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|----------|------------------------|------|-----------------|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

SUF No. 29. The Chief further testified that the contractor he hired to organize the April 27, 2010 earthquake drill was carrying a camera during the drill and took many photographs. Gladle SUF No. 35.

Gladle testified at her deposition that on the day of the earthquake drill, she heard an announcement that led her to believe participation in the drill was not mandatory. Sec. SUF No. 11; Gladle Dep. (Vol. 1) at 55:20 – 56:1. Gladle also alleges that at that time, she was on light duty because she was recovering from her knee injury. Sec. SUF No. 4. In its answer, the Secretary admitted that it had general knowledge of Gladle's knee injury and that she used a cane to ambulate in the workplace. Dkt. 100.

Gladle's testimony explains that her supervisor, Turzan, came to Gladle's office door and informed Gladle that the VA was having an earthquake drill. Sec. SUF No. 6; Gladle Dep. (Vol. 1) at 44:23 – 45:2. Ms. Turzan was an RN Nurse III. Gladle SUF No. 4. Gladle testified that Turzan then asked Gladle to get under her desk during the drill and that, in response, Gladle asked Turzan if she could do anything besides getting under her desk to participate in the earthquake drill. Sec. SUF. Nos. 8 & 9; Gladle Dep. (Vol. 1) at 44:5-50:11. Gladle also testified that she told Turzan "that it would be her fault if [Gladle] got injured" during the drill. Sec. SUF No. 12; Gladle Dep. (Vol. 1) at 60:20-24. Gladle testified that the entire April 27, 2010 incident lasted approximately 5 minutes. Sec. SUF. No. 14; Gladle Dep. (Vol. 1) at 52:24 – 53:5.

Gladle claims that she sustained physical injuries related her participation in the earthquake drill and that she ultimately received workers compensation arising from those physical injuries. Sec. SUF. Nos. 18 & 19.

**B.    Gladle's EEO Activity**

In total, Gladle filed six formal EEO complaints with the EEOC between April 27, 2010 and October 2017.[2] Gladle SUF No. 93. Gladle alleges that "management" generally

_____

[2] In her Statement of Undisputed Facts, Gladle provides a history of her interactions with the VA regarding her EEO claims filed before 2017, much of which the Secretary objects to as irrelevant given the Ninth Circuit's ruling upholding dismissal of Gladle's retaliation and harassment claims regarding the 2010 incident. See Gladle GDF Nos. 59-99. Because Gladle's prior EEO activity may speak to whether and when she could develop a reasonable suspicion that subsequent personnel actions were retaliatory, the Court recites several of Gladle's key allegations relating to the EEOC's actions here. Gladle alleges that on March

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

was aware of her EEO activity because it had received notice from the agency and via this matter, noting also that the Secretary participated in the 9th Circuit appeal in this matter.[3] Gladle SUF Nos. 148-149.

### C.  The VA Terminates Gladle in April 2017

In April 2017, Gladle was employed as an RN, Nurse II at the VA Greater Los Angeles Healthcare System.  Sec. SUF. No. 20.  At the time, Gladle had been absent from work on disability leave since April 1, 2016.  Sec. SUF No. 54.  VA nurses are required to have current, active, and valid RN licenses at all times.  Sec. SUF No. 21.  Gladle is required to renew her California RN license every two years. Sec. SUF. No. 22.  As a VA RN, Nurse II, she was responsible for maintaining all qualifications required for appointment, including a full and unrestricted license to practice, and for providing evidence of those qualifications as an RN to the VA Greater Los Angeles Healthcare System in a timely manner. Sec. SUF Nos. 28 & 30 & 34; Gladle Dep. (Vol. 1) at 36:5-15. In order to renew her RN license every two years, Gladle was required—among other requirements—to complete continuing education, submit fingerprints, report discipline and convictions, and pay the renewal fee.  Sec. SUF. No. 29.

_____

13, 2012, the EEOC reversed the VA's decision dismissing Gladle's July 13, 2011 complaint for discrimination and remanded on the grounds that "a fair reading of the subject claims reflects that Complainant has primarily addressed the issue of an ongoing reasonable accommodation denial" and remanded to the agency for further proceedings. Gladle SUF No. 94.  Gladle alleges that the EEOC reversed the agency's dismissal of a separate formal complaint that alleged retaliation related to Gladle's prior EEO filings, finding that a supervisor's statements that Gladle "was filing false EEO claims and faking a disability" could have had a chilling effect and thus interfered with Gladle's use of the EEO process.  Gladle SUF Nos. 95-96.  Gladle further alleges that the EEOC again remanded Gladle's EEO complaint related to her supervisors statements on the grounds that the agency had developed an inadequate evidentiary record regarding when Gladle learned of her supervisor's comments that she "was filing false claims against the agency and that she was faking being disabled." Gladle SUF No. 97.

[3] The Secretary does not appear to dispute Gladle's general assertions that the Secretary had notice of her EEO activity, but disputes that any manager involved in the 2017 personnel actions knew of Gladle's prior complaints or EEO activity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

As a VA nurse, Gladle was a Title 38 employee. Sec. SUF. No 47. Nurses employed under Title 38 must maintain an "active and unrestricted" nursing license at all times so that they can demonstrate that they are licensed to provide patient care at the VA system, consistent with the community care standard for all United States medical facilities. Sec. SUF No. 48 & 49.

The VA is required to use Primary Source Verification ("PSV")—which is defined by the Joint Commission Accreditation Manual as "[v]erification of an individual practitioner's reported qualifications by the original source or an approved agent of that source"—to confirm that a VA professional possesses a valid license, certification, or registration to practice a profession when such a qualification is required by law or regulation. Sec. SUF Nos. 24 & 25. The VA had a practice of relying on the California Board of Registered Nursing's website to verify that California RN licenses that are set to expire were renewed, through the California Department of Consumer Affairs BreEZe Online tool (the "BreEZe Online tool").[4] Sec. SUF No. 26. The BreEZe Online tool allows searches to verify the status of licenses issued by the Board of Registered nursing; each license record states whether the license is current, delinquent, or has been subject to disciplinary action.[5] Sec. SUF No. 27.

Gladle's RN license was due to expire on Sunday April 30, 2017. Sec. SUF No. 29. On Friday, April 28, 2017, Medical Center Director Ann R. Brown sent a termination letter to Gladle notifying her that she was "being separated effective upon receipt of this notification" for failing to maintain a current RN license (the "Termination Letter").[6] Sec.

---

[4] Gladle does not dispute that the VA relied on the BreEZe Online tool for purposes of PSV. However, Gladle disputes the Secretary's assertion that such reliance was in accordance with the Joint Commission's Primary Source Verification requirements or the VA's own policies.

[5] While Gladle does not dispute the contents of the BreEZe Online tool, she relies on the VA's employment handbook to contend that a BreEze Online tool search result indicating that a license is "delinquent" does not indicate the existence of an "impaired registration."

[6] The parties do not dispute that Brown sent Gladle the April 28, 2017 letter with subject "Termination of Excepted Appointment for Failure to Maintain Current Nursing License." The Secretary contends that the letter "terminated" Gladle, while Gladle contends, without citation to any authority, that it "separated" her from the VA upon receipt and conferred a right to post-separation review. It is notable, in light of Gladle's contention, that the Merriam Webster's Dictionary defines "separation" as "termination of a contractual relationship

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

SUF Nos. 31 & 32.  On May 1, 2017, Lead Nurse Recruiter Eden T. Picketts ("Picketts") ran a search for Gladle's license record through the BreEZe Online tool, which showed Gladle's license status as delinquent as of May 1, 2017.  Sec. SUF No. 35.  The following day, May 2, 2017, Picketts again searched for Gladle's license record through the BreEZe Online tool.  Gladle's license status was again shown by the tool as "delinquent," as of May 2, 2017.[7]  Sec. SUF No. 36.  At the time when she searched Gladle's license record using the BreEZe Online tool, Picketts was not aware that Gladle had engaged in any Equal Employment Opportunity ("EEO") activity.[8]  Sec. SUF No. 38.

Gladle received the April 28, 2017 Termination Letter on May 2, 2017.  Sec. SUF No. 39.  The termination letter advised Gladle that she had the right to seek a post-separation review of her termination by the Veterans Integrated Services Network Director, Marie L. Weldon ("Weldon").  Sec. SUF No. 40.  Gladle filed a request for such a post-separation review. Sec. SUF No. 41. Part of the evidence that was provided to Weldon were screenshots showing Gladle's California RN License status from the BreEZe Online tool.  Sec. SUF No. 44; Weldon Dep. at 14:9-21.  At her deposition, Ms. Weldon testified that it is important that nurses maintain a current and active nursing license because requiring active licensing at all times provides public assurance that patients are receiving "the best of care and they are not at risk for unfortunate outcomes."  Sec. SUF Nos. 50 &

---

(such as employment or military service.)"  Separation Definition, MIRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/separation (last visited Aug. 20, 2020).

[7] The parties appear to have a significant factual dispute regarding the weight and accuracy of license statuses displayed when searching the BreEZe online tool.  The Secretary's position is that Gladle's license was not valid on May 1 and May 2, as verified by the tool's indication that it was "delinquent."  Gladle's position is that because she paid her license renewal fee on April 30, 2017 and by May 3, 2017, her license was again listed as "active" by the BreEZe online tool, her license never lapsed and her termination was a clerical error.

[8] Gladle does not dispute Picketts' lack of knowledge of Gladle's EEO activity, but objects that it is irrelevant. However, the Court observes that whether supervisors responsible for personnel actions know an employee has engaged in protected activities is relevant to a claim of retaliation under the Rehabilitation Act of 1973. See e.g. Thompson v. Donahoe, 961 F. Supp. 2d 1017, 1031 (N.D. Cal. 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. |

51; Weldon Depo. at 54:3 – 55:4.  Weldon was not aware that Gladle had filed any previous complaint or action against the VA.[9]  Sec. SUF No. 52.

Gladle alleges that she received the May 11, 2017 letter Weldon authored regarding her post separation review (the "Post-Separation Review Letter") on May 17, 2017.[10] Gladle SUF No. 137.  The Post-Separation Review Letter stated that after review of Gladle's request for a Post-Separation review, Weldon "sustain[ed] the termination for failure to maintain a current nursing license, as required for your position as a Registered Nurse." Dkt. 109-3 at 302.  The letter further stated: "My decision is final, and there is no further administrative appeal for your Post-Separation review."  Id.

D.   **May 10, 2017 Return to Duty Letter**

In May 2017, Alex Love ("Love"), the Acting Employee and Labor Relations Supervisor at the VA Greater Los Angeles Healthcare System was working on issuing return to duty letters to all long-term Office of Worker's Compensation Programs employees who had not been at work.  Sec. SUF No. 53.  On May 10, 2017, Love sent Gladle a letter informing her that she had been absent from work since April 1, 2016 and directing her to contact him to state her intentions regarding her Federal employment or return to work (the "Return to Duty Letter").  Sec. SUF Nos. 54 & 56.  The letter instructed Gladle to contact Love to state "her intention regarding [her] Federal employment and stated that if Gladle did not return to work on a full time basis by May 22, 2017, she could be subject to administrative action, including separation from Federal service.  Gladle SUF Nos. 126-127.  The letter further instructed that if Gladle wished to "seek a reasonable accommodation that may allow you to return to duty" Gladle should contact a named human resources specialist via telephone.  Sec. SUF No. 57.  Gladle never did so.  Sec. SUF Nos. 58 & 61-62.

At the time Love issued the Return to Duty Letter, Gladle had not reported for work since at least April 1, 2016 and Love was not aware that Gladle had engaged in any Equal

---

[9] Gladle does not dispute Weldon's lack of knowledge of Gladle's prior complaints, but objects that it is irrelevant.  The Court observes, however, that whether supervisors responsible for personnel actions know an employee has engaged in protected activities is relevant to a claim of retaliation.  See e.g. Thompson, 961 F. Supp. 2d at 1031.

[10] The parties dispute whether this letter constituted an employment action "terminating" Gladle's employment or merely acted as an avenue to remedy an already effective termination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | | Date | August 17, 2020 |
|---|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | | |

Employment Opportunity activity or that Gladle had filed a lawsuit against the VA.[11]  Sec. SUF No. 55.

### E.    Gladle's 2017 EEO Complaint

Gladle contacted an EEO counselor regarding her termination from the VA on June 30, 2017, after having received her termination letter on May 2, 2017.  Sec. SUF Nos. 68-69.  The EEO Counselor's report indicated that Gladle's claim was untimely during the informal stage and noted that Gladle was asked to explain her delay in contacting an EEO Counselor within 45 days of the matter alleged to be discriminatory, but Gladle failed to provide a statement explaining the delay.[12]  Sec. SUF Nos. 72 & 73; Dkt. 68-2.

On October 2, 2017, Gladle filed a formal EEO complaint.  Sec. SUF No. 74.  Gladle based her discrimination claim on the VA's decision to terminate her employment for her failure to maintain a current California RN license.  Sec. SUF No. 77.  The Office of Resolution Management ("ORM") issued a Notice of Receipt acknowledging receipt of Gladle's EEO complaint in a letter dated October 26, 2017 and enclosing the Mediation Program Information Sheet and EEO Counselor's report.[13]  Sec. SUF Nos. 75-76.

Gladle has never met Ms. Brown, Ms. Weldon, or Mr. Love.  Sec. SUF No. 81. Gladle testified at her deposition that she has never spoken with any of the VA employees involved in her separation about her EEO complaints, her union grievance, or her civil lawsuit and that she does not know whether or not Ms. Brown had knowledge of her disabilities.[14]  Sec. SUF Nos. 78-79; Gladle Dep. (Vol 2) at 138:9-18.

---

[11] Gladle does not dispute Love's lack of knowledge of Gladle's litigation or EEO activity, but objects that it is irrelevant. The Court observes, however, that whether supervisors responsible for personnel actions know an employee has engaged in protected activities is relevant to a claim of retaliation. See e.g. See e.g. Thompson, 961 F. Supp. 2d at 1031.

[12] Gladle does not dispute the contents of the EEO Counselor's report. However, she claims that she never received a copy of the report as required by regulation.

[13] Gladle does not dispute the contents of the Notice of Receipt or that it was issued. However, she claims that she never received a copy of the Notice of Receipt.

[14] Gladle contends that her testimony is irrelevant because "[t]he Named Defendant is the Secretary of the VA, not individual employees. Whether Ms. Gladle personally discussed her history of EEO activity with any of them is of no consequence […]". Sec. GDF Nos. 78-79. But, as the Court has observed, evidence related to the knowledge of persons

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

Gladle further testified that at the time of her deposition, she continued to receive Office of Workers' Compensation Programs ("OWCP") disability benefits totaling approximately $4,800 per month. Sec. SUF Nos. 82-83; Gladle Depo. 109:24 – 110:12. Gladle has had health coverage from the time of her workplace injury through the present. Sec. SUF No. 81.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing a genuine issue for trial" in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a

---

responsible for employment actions is relevant to a retaliation claim under the Rehabilitation Act of 1973. See e.g. Thompson, 961 F. Supp. 2d at 1031.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

Gladle moves for partial summary judgment as to liability on her claim for denial of reasonable accommodation set forth in the FAC and as to liability on each of her claims for relief set forth in the FSC. Gladle Mot. at 2.  The Secretary moves for summary judgment as to each of Gladle's surviving claims. Sec. Mot. at v.

Each of Gladle's claims arise under the Rehabilitation Act of 1973 (the "Rehabilitation Act"), which is the exclusive judicial remedy for disability claims by federal employees. Vinieratos v. U.S. Dept. of Air Force Through Aldridge, 939 F.2d 762, 773 (1991); Boyd v. United States Postal Service, 752 F.2d 410, 413 (9th Cir. 1985). Disability discrimination claims brought under the Rehabilitation Act are governed by Americans with Disabilities Act ("ADA") standards. See 29 U.S.C. § 791(f) (incorporating in relevant part 42 U.S.C. § 12112); 29 C.F.R. § 1614.203(b); see also Vinson v. Thomas, 288 F.3d 1145, 1152 (9th Cir. 2002) (explaining that there is no significant difference in the analysis of rights and obligations created by the ADA and the Rehabilitation Act, and thus the two Acts are construed the same).

### A. Gladle's Claims Relating to the 2017 Termination

Gladle's FSC asserts three claims against the Secretary stemming from her May 2017 termination from the VA—for retaliation, disability discrimination, and discrimination in denying a reasonable accommodation. FSC ¶¶ 47; 61; 77.  Gladle alleges that that Secretary unlawfully retaliated against her because she participated in protected activities, including filing complaints with the EEO, filing union grievances, opposing her 2017 termination for failure to maintain a valid RN license, and prosecuting this lawsuit. Id. ¶ 47.  Gladle alleges that "the termination of her employment with the V.A. was motivated by disability discrimination in violation of the Rehabilitation Act." Id. ¶ 61. Gladle further alleges that the Secretary discriminated against her under the Rehabilitation Act by "refusing to engage in the interactive process and denying an available and reasonable accommodation." Id. ¶ 77.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

### i. Exhaustion of Administrative Remedies as to Gladle's 2017 Discrimination, Retaliation, and Failure to Accommodate Claims

The Secretary moves for summary judgment on Gladle's claims for discrimination, retaliation, and failure to accommodate stemming from her May 2017 termination from the VA on the grounds that each of those claims are time barred because Gladle failed to exhaust her administrative remedies. Sec. Mot. at 13. The Secretary asserts that because Gladle "contends that she received the VA's letter terminating her employment on May 2, 2017" and "further alleges that she did not contact an EEO counselor until June 30, 2017" she "failed to timely initiate counseling" within 45 days, as required by EEO regulation and her claims are thus time barred. Sec. Mot. at 15.

The Rehabilitation Act requires a federal employee to exhaust her administrative remedies before filing a lawsuit. See e.g., Brown v. General Serv. Admin., 425 U.S. 820, 832–33 (1976); Vinieratos v. Dep't of the Air Force, 939 F.2d 762, 773–75 (9th Cir. 1991). This means a federal employee must participate in the EEO process by contacting an EEO counselor "within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). A plaintiff must file charges relating to each discrete discriminatory act within the limitations period provided. Id. The 45-day time limit is "subject to waiver, estoppel, and equitable tolling." 29 C.F.R. §1614.604(c).

The 45-day clock begins to run on the day the discrete discriminatory or retaliatory act—such as a "termination, failure to promote, denial of transfer, or refusal to hire"—"happened." Morgan, 536 U.S. at 110 & 114. When a plaintiff alleges an employer has taken discriminatory personnel action, such as in the case of a discriminatory termination, the limitations period for initiating the EEO counseling process runs from the time at which the personnel decision was "made and communicated to [the plaintiff]." Delaware State Coll. v. Ricks, 449 U.S. 250, 258, 101 S. Ct. 498, 504, 66 L. Ed. 2d 431 (1980); see also Green v. Brennan, 136 S. Ct. 1769, 1782, 195 L. Ed. 2d 44 (2016) (reiterating that "an ordinary wrongful-discharge claim accrues—and the limitations period begins to run—when the employer notifies the employee he is fired, not on the last day of his employment."); Lukovsky v. City & Cty. of San Francisco, 535 F.3d 1044, 1050 (9th Cir. 2008) (explaining the Ricks Court's conclusion that the limitations period "commenced

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

when the adverse decision was communicated to Ricks, even though the consequences of the action were not fully felt at that time."). The EEOC "shall extend the 45 day limit…when the individual shows…that he or she did not know and reasonably should not have [] known that the discriminatory matter or personnel action occurred." 29 C.F.R. § 1614.105 (a)(2). But a grievance process that allows an employee to challenge an already effective termination decision of which the employee has notice does *not* "suggest that the earlier decision was in any respect tentative" or otherwise extend the limitations period. Ricks, 449 U.S. at 261 (observing that a "grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made.") (emphasis in original).

Here, it is undisputed that Gladle's supervisors had decided to terminate her by April 28, 2017 and that Gladle was on notice of that decision as of May 2, 2017, when she received the Termination Letter from Medical Center Director Ann R. Brown bearing the subject: "Termination of Excepted Appointment for Failure to Maintain Current Nursing License." Dkt. 109-3 at 296. That letter plainly communicates a final personnel action as of May 2, 2017, explaining: "you have not maintained a qualification required for continued employment and are being separated *effective upon receipt of this notification.*" Id. (emphasis added). As such, under the ordinary rule articulated by the Supreme Court in Ricks and Green, as of May 2, 2017, the personnel decision—in this case a termination—had been "made and communicated" to Gladle, and the 45 day limitations period to file an EEO complaint had begun to run.

Gladle seeks to avoid the conclusion that the April 28th, 2017 Termination Letter represented a final personnel decision by arguing that her termination did not become *effective* until May 17, 2017, when she received notice that the VA's post-separation grievance process had concluded. That argument flies in the face of the Ricks Court's reasoning that the availability of a grievance procedure does not suggest that an allegedly discriminatory personnel decision was tentative (i.e. that the employee has not yet been fired). Ricks, 449 U.S. at 261. Here, beyond conclusory allegations that Gladle believed the Termination Letter was issued in error that should be cleared up by her grievance, the Court sees no indication that Gladle's termination was tentative or would have required additional steps to finalize had she not availed herself of the VA's post-separation grievance procedures. To the contrary, even Gladle acknowledges in her Opposition to the Secretary's Motion for Summary Judgment that had she: "not undertaken to initiate post-separation review after receiving the 28 April letter, the clock would have started to run on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

2 May 2017, the day of receipt." Sec. Opp. at 19. Because the post-separation review process only ratified the VA's termination of Gladle, the Court concludes that the clock for exhaustion of remedies began to run on May 2, 2017, when she was unequivocally advised that her employment was terminated.

Gladle's assertion that the discovery rule should apply to preclude the limitations period from running until May 17, 2017 because that is when she alleges she discovered her injury is unavailing for the same reason. This circuit's law is clear that "a limitations period begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action." See Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1266 (9th Cir.1998) (quoting Trotter v. Int'l Longshoremen's & Warehousemen's Union, 704 F.2d 1141, 1143 (9th Cir.1983)). In this matter, the relevant "injury" that is the basis of Gladle's action is her termination from employment at the VA, which, based on its terms, became effective when she received written notice of her termination on May 2, 2017, irrespective of her choice to seek a remedy through the VA's post-separation grievance process. Even if Gladle assumed, as she argues, that her termination occurred due to a clerical error and "that once she pointed out the "error" and documented it with undisputable [sic] evidence, [the agency] would do the right thing," she was nevertheless injured by the agency's effective termination decision and on notice of that injury as of May 2, 2017.

Likewise, Gladle's asserted confusion regarding the May 10, 2017 Return to Duty Letter does not alter the conclusion that she was terminated as of May 2, 2017 or otherwise extend her claim. To the extent that Gladle relies on Morgan as support for an argument that the April 28 Termination Letter combined with the VA's subsequent May 2017 communications with Gladle represented an ongoing violation because the later communications were part of an "orchestrated, pretextual, and pre-conceived action[] to get rid of an unwanted employee," Sec. Opp. at 14-15, that position is belied by Morgan itself, which recognizes "termination" as one of the "discrete acts" that separately triggers a limitations period. 536 U.S. at 114 ("each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice.") (internal quotations omitted); see also Eng v. Cty. of Los Angeles, 737 F. Supp. 2d 1078, 1098 (C.D. Cal. 2010) (declining to apply continuing violation doctrine to a personnel transfer, which the court found "most closely resembles a discrete act" under Morgan.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

Gladle has cited no evidence demonstrating that the VA engaged in "severe or pervasive" conduct that would support a continuing violation. See Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1122 (9th Cir. 2008) (a hostile work environment exists only where "the discriminatory conduct was severe or pervasive"). To the contrary, as discussed in more detail *infra* with respect to equitable estoppel, such an assertion is contradicted in the record by the supervisor who issued the Return to Duty Letter, who attested that: "[i]n May 2017, [he] was working on issuing return to duty letters to *all* long-term Office of Workers Compensation Programs [] employees who had not been at work" and that at the time he was not aware that the VA had terminated Gladle or that she had engaged in EEO activity or litigation against the VA. Dkt. 110-8, Love Dec. ¶¶ 3 & 10-11. Further, Gladle cannot rely on the VA's denial of her post-separation grievance to support the existence of a continuing violation, because she has presented no evidence that the grievance denial was "independently discriminatory." See Morgan, 536 U.S. at 113.

The Court therefore concludes that the 45-day limitations clock began to run when Gladle received notice of her termination on May 2, 2017. The parties do not dispute that Gladle first contacted an EEO counselor regarding her termination on June 30, 2017, which was 59 days after May 2, 2017. As such, unless Gladle can demonstrate that her 2017 claims are subject to equitable tolling, equitable estoppel, or waiver, they are time barred.

## 1. Equitable Tolling and Estoppel

The Court next considers whether Gladle's claims are properly subject to equitable principles, such that the limitations period was tolled during part of the period between May 2, 2017 and June 30, 2017. Gladle asserts that her 2017 claims are subject to equitable tolling until May 17, 2017, when she received the Post-Separation Review Letter, because she was "confused" by the three letters she received from the VA in May 2017 and "believed that the 28 April 2017 [letter] was sent in error, which she immediately undertook to correct." Gladle further asserts that, even if equitable tolling is unavailable to her, equitable estoppel should apply to stop the 45-day limitations period from running because the Secretary "took deliberate action to confuse and thwart [Gladle's] right and entitlement to continued employment while recovering from work related injury."

The doctrines of equitable tolling and equitable estoppel may each "apply to the requirement that a claim of discrimination be filed with the agency within the applicable limitations period." Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002) (relying on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)).  Although frequently conflated, equitable tolling and estoppel are best viewed separately: "Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit, whereas equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant." Santa Maria v. Pac. Bell, 202 F.3d 1170, 1176 (9th Cir. 2000) (citation omitted), overruled on other grounds by Socop–Gonzalez v. INS, 272 F.3d 1176, 1194–96 (9th Cir. 2001) (en banc).

### a. Equitable Tolling

"A litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.' " Smith v. Davis, 953 F.3d 582, 590 (9th Cir. 2020) (en banc) (quoting Menominee Indian Tribe of Wis. v. United States, —— U.S. ——, 136 S. Ct. 750, 755, 193 L.Ed.2d 652 (2016)).

For instance, "equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria, 202 F.3d at 1178.  Equitable tolling is inappropriate and "[t]he time period for filing a complaint of discrimination begins to run when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights," such as when a party receives notice that a personnel action is effective immediately or "final." Boyd v. U.S. Postal Serv., 752 F.2d 410, 414 (9th Cir. 1985) (citations omitted).  To the contrary, "[i]f a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.  However, equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty." Santa Maria, 202 F.3d at 1178 (citations omitted).  If the plaintiff "knew or reasonably should have known" of the possible existence of a claim, equitable tolling will not apply.  Id.; see also, Lee v. ING Group, N.V., 671 F. App'x 945, 947 (9th Cir. 2016) (equitable tolling was not available to a disabled employee who first learned of his employer's retaliatory motive through the discovery process, where evidence indicated that he had a "reasonable suspicion of retaliation" when "first told [he] would not be able to return to his old job").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

Here, the parties agree that Gladle was aware of the 45-day limitations period to initiate EEO counseling. See Sec. Mot. at 16; Sec. Opp. at 23. As such, the Court considers only whether Gladle is entitled to equitable tolling because she reasonably could not have known of the existence of her claim until the date on which she alleges she received the VA's May 11, 2017 post-separation review letter: May 17, 2017, or because she has otherwise demonstrated that an "extraordinary circumstance" prevented her from contacting the EEO counselor within the limitations period.

In this case, as in Santa Maria, the undisputed facts demonstrate that Gladle knew or should have known of the possibility that she had a discrimination claim on May 2, 2017, the day she received the April 28 Termination Letter, even if her claim was not "virtually certain" at that stage. See Santa Maria, 202 F. 3d at 1178-79 (listing a group of undisputed facts including the employer's knowledge of the plaintiffs' disability, his leave status, and prior interactions with the employer regarding disability accommodations that, taken together, "compel the conclusion that Santa Maria knew or reasonably should have known of the possible existence of a disability discrimination claim."). The day she received the April 28 Termination Letter, Gladle knew she had a disability and that the VA knew she had a disability. She also knew that she had been on leave from the VA related to that disability for more than a year, since April 1, 2016, and that the VA had fired her during that disability leave. See Sec. SUF No. 54. Gladle had a history of filing EEO complaints against the VA regarding her disability and at least some of those prior complaints had included allegations that the VA or its employees had retaliated against her due to requests for reasonable accommodations. Gladle SUF Nos. 94-96. Through the EEO complaints process, Gladle was aware that at least one prior supervisor had alleged that she "was filing claims against the agency and that she was faking being disabled." Gladle SUF No. 97. Gladle also alleges that she knew her nursing license had not lapsed because she had paid the license renewal fee on April 30, 2017. Gladle SUF No. 133.

Based on these facts, none of which Gladle disputes, the Court concludes that Gladle knew or reasonably should have known of the possibility that she had claims for disability discrimination and retaliation on May 2, 2017. Gladle need not have been certain that she was fired with discriminatory intent; it is enough that she was or should have been aware that she may have been. As such, the Court finds that equitable tolling does not apply and the limitations period began to run on May 2, 2017.

To the extent that Gladle also argues that she is entitled to equitable tolling because she became confused upon receiving the May 10, 2017 Return to Duty Letter from Love,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

such that receiving the Return to Duty Letter caused her to believe that her employment with the VA had not in fact been terminated, Gladle's initial contact with the EEO officer was nevertheless untimely. To establish a basis for equitable tolling, a plaintiff who is aware of the limitations period and the possible existence of a claim must demonstrate "that some extraordinary circumstance stood in his way and prevented timely filing." Smith, 953 F.3d at 590; see also Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999) (Plaintiff must demonstrate that she was "prevented from asserting a claim by wrongful conduct on the part of the defendant, or [that] extraordinary circumstances beyond [her] control made it impossible to file a claim on time."). "The amount of time that the extraordinary circumstance that impeded timely filing existed" represents (and is equal to) "the *maximum* additional time, beyond the period of limitations, available to a litigant otherwise eligible for equitable tolling." Smith, 953 F.3d at 598. (emphasis added). Because, as explained above, the Court concludes that Gladle knew or should have known she had been terminated on May 2, 2017, when she received the April 28, 2017 Termination Letter, the limitations clock began to run on that date. A subsequent event that may give rise to equitable tolling, such as receipt of the Return to Duty Letter, does not toll the clock retroactively; tolling occurs on the date of the tolling event. See e.g., Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 561, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (class suit was filed with 11 days left to run within the tolling period, tolling the limitations period as of that date; "the intervenor thus had 11 days after the entry of the order denying them participation in the suit as class members" in which to proceed with their claims.). May 2, 2017 was 59 days before June 30, 2017. As such, Gladle would need to demonstrate that due to an "extraordinary circumstance," she was entitled to tolling of at least 14 days to render her outreach to the EEO officer timely within the 45-day limitations period.

Equitable tolling does not apply even if the Return to Duty Letter represented an extraordinary circumstance because it would not toll the limitations period for long enough to render Gladle's outreach timely. It is undisputed that Gladle received the Return to Duty Letter no earlier than the May 10, 2017 date on the letter. At that time, the limitations clock had run for eight days. Gladle contends that she received the May 11, 2017 Post-Separation Review Letter, denying her grievance, on May 17, 2017. Sec. Opp. at 11. The Post-Separation Review Letter explained that the VA's Network Director had denied Gladle's grievance regarding her May 2, 2017 termination and "sustained the termination for failure to maintain a current license, as required for your position as a Registered Nurse." Dkt. 109-3 at 287. The Post-Separation Review Letter further stated: "My decision is final, and there is no further administrative appeal for your post separation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|----------|------------------------|------|-----------------|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

review." Id.  The Post-Separation Review Letter unequivocally communicates that Gladle was no longer employed by the VA; as of her receipt of the letter by May 17, 2017, Gladle could not reasonably have believed that her termination from the VA was not final and complete. To the contrary, Gladle concedes that she was on notice that the VA had made a "final decision to separate her from employment" and, as such, she had been irreversibly fired as of May 17, 2017.  Sec. Opp. at 11-12 & 17.

Gladle knew that her termination was final by May 17, 2017. As such, making all inferences in Gladle's favor and finding that she diligently pursued her rights and that the Return to Duty Letter constituted an "extraordinary circumstance" warranting equitable tolling—and thus that an event tolling the limitations period occurred on May 10, 2017—the maximum period for which equitable tolling could stop the clock would be the seven days between May 10, 2017 and May 17, 2017.  *See Smith*, 953 F.3d at 598.  Even if equitable tolling applied for seven days, it would not be sufficient to render Gladle's outreach to the EEO officer timely.  By June 30, the limitations clock would have run for 52 days: the eight days between May 2, 2017 and May 10, 2017, plus the 44 days between May 17, 2017 and June 30, 2017.[15]  As such, equitable tolling does not render Gladle's outreach to the EEO officer timely.

---

[15] Numerous courts have determined that equitable tolling did not suffice to render a claim timely because the maximum period that could be tolled would be insufficient to make a party's claim timely. *See e.g.* Gonzalez v. Trimble, No. CV 11-8690-PA PLA, 2012 WL 7145703, at *7 (C.D. Cal. Nov. 9, 2012), report and recommendation adopted, No. CV 11-8690-PA PLA, 2013 WL 571760 (C.D. Cal. Feb. 12, 2013) (even if the period from the date ineffective counsel was hired until the date the state bar received a complaint was equitably tolled, the petition would not be timely); Ogle v. Bd. of Prison Terms, No. CIVS060213 LKK JFM P, 2007 WL 2344892, at *4 (E.D. Cal. Aug. 15, 2007), report and recommendation adopted, No. CIVS060213LKKJFMP, 2007 WL 2792564 (E.D. Cal. Sept. 26, 2007) (even if petitioner was granted equitable tolling for twelve days during which he was housed in administrative segregation, "it would not be sufficient to render his petition timely"); Viti v. Guardian Life Ins. Co. of Am., No. 10 CIV. 2908 ALC MHD, 2013 WL 6500515, at *15 (S.D.N.Y. Dec. 11, 2013) (declining to apply equitable tolling to a 186 day period between the date a letter of denial was presumed to have been received by a mentally incapacitated defendant and the date on which the letter was found by his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

### b.  Equitable Estoppel

Unlike a finding of equitable tolling, equitable estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit." Johnson, 314 F.3d at 414 (quoting Santa Maria, 202 F.3d at 1176) (emphasis added).  "A finding of equitable estoppel rests on the consideration of a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied." Santa Maria, 202 F.3d at 1176.  As such, equitable estoppel may apply against an employer when the employer misrepresents or conceals facts necessary to support a discrimination charge.  Santa Maria, 202 F.3d at 1177.

Gladle has pointed to no evidence that would allow the Court to conclude that the VA acted with improper purpose or otherwise had "actual or constructive knowledge of the deceptive nature of its conduct" with respect to the series of May 2017 communications that Gladle contends were intended to "confuse and thwart [her] rights." Sec. Opp. at 24.  According to the undisputed facts, Gladle received a May 10, 2017 Return to Duty Letter from Alex Love that directed her to "return to work on a full time basis by May 22, 2017.  Gladle SUF Nos. 126-127.  Gladle contends in her motion that Love must have drafted the May 10, 2017 Return to Duty Letter "with full knowledge of the 28 April 2017 letter" and that therefore "the only inference to be drawn" is that Love "knew […] there was no legitimate basis for [the May 2, 2017] termination" and so "pivoted to a new tune: return to work by 22 May 2017 or face termination."  Sec Opp. at 20.

Despite these arguments, Gladle presents no evidence to support her theory that Love acted with improper purpose in sending the letter.  In the first instance, Love's sworn statement denies any knowledge of the April 28, 2017 Termination Letter.  Love attests that on May 10, 2017 he "was not aware that the VA had terminated [Gladle] for failing to maintain a current California Registered Nurse [] license" and further that he "did not discuss the Return to Duty Letter with Medical Center Director Ann R. Brown," who authored the Termination Letter and was not otherwise "aware that Plaintiff had engaged

wife because "plaintiff's case is untimely notwithstanding the maximum toll that might be applied.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

in any Equal Employment Opportunity [] Activity" or had filed this lawsuit.  Love Decl. ¶¶ 8-11.  Second, Gladle offers no admissible evidence demonstrating that Love knew of her termination.  All that Gladle asserts is that Love must have known of her termination based on a single April 28, 2017 email that was sent to Love and others with subject line "can you please mail (employee extended leave)."  While the email refers to an attachment titled "Gladle.pdf," nothing has been attached to the email in the record.  As such, the email does not provide any evidence that Love knew of Gladle's termination.

Moreover, even assuming that Love did in fact know of Gladle's termination, the evidence does not demonstrate that Love acted with bad faith such that Gladle is entitled to equitable relief.  The undisputed evidence establishes that in May 2017, Love was in the process of "issuing return to duty letters to *all* long-term Office of Workers' Compensation Programs ("OWCP") employees who had not been at work."  Love Dec. ¶ 3; Sec. GDF No. 53. (emphasis added). Nothing in the record suggests that the May 10, 2017 Return to Duty Letter was tailored towards Gladle outside the bounds of the process Love was undertaking with respect to every OWCP employee who met certain standard criteria.  As such, it cannot be disputed that Love sent the Return to Duty Letter to Gladle out of any animus towards Gladle, and the Court cannot as a matter of law determine that Love acted deceptively or otherwise with improper purpose.  Equitable estoppel does not apply.

### 2. Waiver

Finally, Gladle argues that her claim is timely because the agency waived the limitations period when the EEO Counselor accepted her informal complaint following an email exchange regarding the timeliness of the complaint. Sec. Opp. at 21.  That argument is unavailing.  "The mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation does not result in an administrative finding of discrimination." Boyd v. U.S. Postal Serv., 752 F.2d 410, 414 (9th Cir. 1985) (citations omitted).  Where, as here, the EEOC has dismissed a complainant's EEO Complaint *because* the complainant failed to comply with the limitations period, there is no legal support for the proposition that the agency has waived the issue of timeliness.  *See* Dkt. 68-4 (dismissing Gladle's EEOC complaint because there was "not sufficient basis for waiving or extending the time limits per EEOC regulations.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

In sum, the Court concludes that Gladle's 2017 claims are time-barred because Gladle did not contact an EEO counselor within 45 days as required by the regulation and her claims are not properly subject to equitable tolling, equitable estoppel, or waiver.

Accordingly, the Court **GRANTS** summary judgment to the Secretary with respect Gladle's 2017 claims of disability discrimination, retaliation, and failure to accommodate.

### B. Gladle's 2010 Failure to Accommodate Claim

Gladle asserts a claim against the Secretary for failure to accommodate her disability related to the April 27, 2010 earthquake drill. Specifically, Gladle's claim alleges that the Secretary failed to provide a reasonable accommodation as required by the Rehabilitation Act of 1973 in response to her request that she be allowed participate in the drill in an alternate manner due to her disability. FAC ¶¶ 22-66.

As explained above, disability discrimination claims arising under the Rehabilitation Act are governed by ADA standards. 29 U.S.C. § 791(f) (incorporating in relevant part 42 U.S.C. § 12112). To prevail on a claim for failure to accommodate a disability under the Rehabilitation Act, a party must show: "(1) She is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of the job with reasonable accommodation," and (3) she suffered an adverse employment action because of the disability." Ludovico v. Kaiser Permanente, 57 F. Supp. 3d 1176, 1199 (N.D. Cal. 2014) (citing Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir.2012)). Implicit in the statutory duty to provide a reasonable accommodation "is that the employer must actually *know* of the alleged disability in question," Ludovico, 57 F. Supp 3d at 1198-99. Upon becoming aware of a need for an accommodation, the "employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001) (citing Barnett v. U.S. Air, 228 F.3d 1105, 1114 (9th Cir.2000)). The employer's obligation to participate in the interactive process is triggered by notification that the employee a) has a disability and b) desires an accommodation. Vinson v. Thomas, 288 F.3d 1145, 1154 (9th Cir. 2002).

Gladle seeks summary judgment on her 2010 failure to accommodate claim on the grounds that Gladle requested a reasonable accommodation for her disability during the April 2010 earthquake drill and a reasonable accommodation was available, but Gladle's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|----------|------------------------|------|-----------------|
| Title    | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

supervisor "refused to engage in the interactive process."  Gladle Mot. at 18-20.  Gladle alleges that when Turzan directed her to "duck and cover" during the earthquake drill she "told Ms. Turzan that she [could] not get under the desk because of her injury and asked whether there [was] anything else she could do" to participate in the drill, Gladle mot. at 18, and that—instead of engaging in the interactive process in response to Gladle's question—Turzan "failed to respond to the request" and reiterated her instruction to "duck and cover."  Gladle Mot. at 22.  In its cross motion, the Secretary seeks summary judgment on the 2010 failure to accommodate claim on the grounds that Gladle is "unable to show that her employer knew about any genuine medical impairment, or that her employer failed to reasonably accommodate such disability while it existed."  Sec. Mot. at 23.  The Secretary contends that Gladle cannot establish that she communicated in good faith regarding her request for an accommodation.  Sec. Mot. at 22.

Triable issues of fact exist that preclude the Court from granting summary judgment to either party.

For example, the parties raise genuine factual disputes regarding the scope and content of the interaction between Gladle and Turzan during the earthquake drill.  A single page document that appears to the Court to be Gladle's account of the events that occurred during the earthquake drill on April 27, 2010, but which is not dated or signed, states that Turzan came to Gladle's office door, after which Gladle "told" Turzan that she "understood I needed to be under my desk but due to an injury of my knee, which she was aware, I did not wish to get under my desk at this time as I did not want to risk re-injuring myself."  Dkt. 109-3 at 265.  Likewise, Gladle testified during her deposition that Turzan appeared "at my door" during the drill and, following an exchange during which Turzan "pointed" and told Gladle "you're not under the desk," Gladle "reminded her again that I had an injury" and "asked her if there was anything else I could do."  Gladle depo. at 44:23-45:11.  However, the Secretary cites to specific sections of Turzan's testimony that raise genuine disputes regarding the interaction.  While Turzan testified that she recalls "seeing [Gladle] in her office" during the drill as she and the contractor "were walking down the hall,"  Ms. Turzan denied entering Gladle's office during the drill or engaging in a conversation with Gladle, explaining that she told Gladle only the "[s]ame thing I told everybody else as we were going down the hall. Duck and cover," after which she and the contractor "continued to walk."  Turzan depo. at 47:8-23.  Turzan further testified that, to her recollection, Gladle did not ask her if there was anything else Gladle could do to participate in the drill.  Turzan depo. at 53:5-9.  Those genuine disputes preclude the Court from determining whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

Gladle communicated that she had a disability for which she desired an accommodation, triggering an obligation to participate in the interactive process. *See* <u>Vinson</u>, 288 F.3d at 1154.

Questions of fact exist regarding whether and how Gladle requested an accommodation for her disability during the April 2010 earthquake drill, and what—if anything—Turzan said or did to either initiate or refuse to participate in the interactive process in response. The disputed record therefore precludes the Court from granting summary judgment on this ground to either party.

Accordingly, the Court **DENIES** Gladle's motion for summary judgment with respect to her 2010 failure to accommodate claim and **DENIES** the Secretary's motion for summary judgment with respect to Gladle's 2010 failure to accommodate claim.

### C. Punitive Damages

The Secretary moves for summary judgment on the grounds that "a federal executive agency branch is not subject to punitive damages." Sec Mot. at 23. Remedies for violations of the Rehabilitation Act are delineated in the Civil Rights Act of 1991, <u>42 U.S.C. § 1981a(a)(2)</u>. Punitive damages are not available against a government or government agency. <u>42 U.S.C. § 1981a(b)(1)</u> ("a complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*)") (emphasis added); <u>see also</u> <u>Tuers v. Runyon</u>, 950 F. Supp 284, 285-86 (E.D. Cal. 1996) (finding that the Postal service, as a Federal agency, enjoyed immunity from punitive damages claims brought pursuant to the Rehabilitation Act). The VA is a federal agency within the meaning of the Civil Rights Act of 1991, and therefore enjoys immunity from punitive damages claims under the Rehabilitation Act.

Accordingly, the Court **GRANTS** summary judgment to the Secretary on Gladle's Punitive damages claims.

## V. CONCLUSION

In accordance with the foregoing, the Court orders as follows:

1.     The Court **GRANTS** summary judgment to the Secretary with respect Gladle's 2017 claims of disability discrimination, retaliation, and failure to accommodate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-00057-CAS(JCx) | Date | August 17, 2020 |
| Title | MARILYN GLADLE v. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS ET AL. | | |

2.   The Court **DENIES** Gladle's motion for summary judgment with respect to her 2010 failure to accommodate claim.

3.   The Court **DENIES** the Secretary's motion for summary judgment with respect to Gladle's 2010 failure to accommodate claim.

4.   The Court **GRANTS** summary judgment to the Secretary on Gladle's punitive damages claims.

IT IS SO ORDERED.

|  | 00 | : | 26 |
| Initials of Preparer | | CMJ | |